THOMPSON v. McCLELLAN, Mayor, et al.

(Supreme Court, Special Term, Kings County. June, 1909.)

INJUNCTION (§ 136*)—TEMPORARY INJUNCTION—SUNDAY LAW—ENFORCEMENT.
    Where complainant's amusement park had been in operation for seven years under a license authorizing it to remain open on Sundays as well as week days, and it did not appear that there was anything indecent, immoral, or improper about the amusements or recreations indulged in at the park, a preliminary injunction would be granted restraining the mayor and police department from interfering with the opening of the park on Sundays for the alleged violation of the Sunday law; it appearing that the refusal of the injunction would result in greater injury to complainant than the closing of the park would result in benefit to the city, notwithstanding the mayor had refused to renew complainant's license for the current year, except to authorize its operation on week days.

    [Ed. Note.—For other cases, see Injunction, Cent. Dig. § 307; Dec. Dig. § 136.*]

Suit by Frederick Thompson, the sole surviving partner of Thompson & Dundy, against George B. McClellan, as Mayor of the City of New York, and others. On motion for a preliminary injunction to prevent the Mayor and Police Officers of the City of New York from proceeding to close complainant's amusement park for alleged violation of the Sunday law. Granted on condition.

George W. Wingate, for plaintiff.
Francis K. Pendleton, Corp. Counsel, for defendants.

KELLY, J. The mayor purposes, unless restrained by injunction, to close Luna Park at Coney Island because its operation is said to violate the Sunday law. It has been open on Sunday since it began operations seven years ago. Sunday in summer time is the great holiday at Coney Island. The affidavits aver, and it is not contradicted, that on

---
*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the fine Sundays in summer 350,000 people visit the comparatively limited area of the summer amusement center known as Coney Island. They go there for pleasure and for an outing in the fresh air by the sea. The mayor is beset on the one side by people who insist that any recreation on Sunday violates the law of the state and is contrary to religious principles, and there may be people who honestly believe that Luna Park violates the Sunday law in displaying its attractions on Sunday. There are many others, however, who believe just as honestly that places such as Luna Park violate neither the law of God nor man.

There is a difference of opinion between judges at Trial Term and judges in the appellate courts as to what the Sunday statute forbids and what it permits. The question might easily have been settled a year ago by the Court of Appeals, if the city authorities or the showmen really wanted it settled. The judges know this, the corporation counsel knows it, and any lawyer competent to draw a complaint in a suit "to enjoin the police," as this new branch of jurisprudence is generally described, understands that these questions are not settled by the granting or denying of temporary injunctions, but by the judgment of a court after deliberate trial—a judgment which presents the evidence on both sides, the law, and the rulings of the court, and which may be deliberately reviewed, so that the law may be settled. There is no mystery about this, but for some reason neither litigant pusues this obviously decent way to settle the question. Instead, we have a spasmodic outburst every year with the return of the summer. Injunctions are granted by some judges and refused by others; but that is the end of it. No one ever hears that the cases are tried or judgments rendered. At the opening of the June Special Term for motions this year, there were 40 applications for injunctions against the police on the calendar in one day, and not one of them ready for argument on either side. This is all wrong. It puts a burden on the courts which does not belong there. It is demoralizing to the police. One man is protected by injunction. His next door neighbor has no injunction. The issuance of the order is used as an excuse for permitting things to go on which were never enjoined.

The court cannot manage the police department of the city of New York, nor can the court supervise shows and theaters and other enterprises which, from the very nature of things, as the Court of Appeals says in Delancy v. Flood, 183 N. Y. 323, 76 N. E. 209, 2 L. R. A. (N. S.) 678, 111 Am. St. Rep. 759, may be legal one moment and illegal the next according to the whim of the manager or performer. I have refused to issue these ex parte injunctions, which, once granted, are never argued, and serve in effect as a license or permit granted by a judge, who has no means of determining what will be done by the plaintiff or left undone by the defendants under his order. The proper and orderly administration of government in the city is committed to the mayor and his appointees in charge of the police department, and it is unfortunate that some plain common sense is not used in handling this Sunday question. For instance, the question whether the Sunday law is violated by common shows could as well be tested by closing up some Sunday night theater on Broadway, Manhattan, or over here in Brooklyn, as by summarily shutting down Luna Park.

People thronged to Coney Island on Sunday afternoons in summer long before the theater proprietors on Broadway, Manhattan, thought of opening theaters on Sunday nights, and if the welfare and healthy enjoyment of the community are to be considered, it would appear wiser to face the real issue, which appears to be whether the New York theaters can open on Sunday, rather than to make Luna Park the scrapegoat. It is proper to say that in this present case of Luna Park, when an ex parte preliminary injunction was refused, the matter was brought to the personal attention of the mayor, who at once instructed the police authorities to refrain from closing the plaintiff's park until this motion was argued and decided.

If the court must interfere in this matter, I think the plaintiff makes out a case for a preliminary injunction pending a trial of the issues under elementary equitable rules. I find that in the case of Luna Park the enterprise has been in existence for some seven years. There is not the slightest suggestion that there is anything indecent, immoral, or improper about the amusements or recreations indulged in at this particular place. The respectable character of the plaintiff's amusement park is well known to every resident in Brooklyn. It is the largest place of its kind, so the affidavits say, not only in this country, but in the world. For seven years the mayor of the city of New York has granted a license to this park under which it operated on Sunday. At the beginning of this present summer season, for the first time in the history of the place, owing to the rigorous opposition of some of the citizens insisting on a strict interpretation of the Sunday law, he refused to issue a license save for six days. Sunday is the day upon which the largest throngs visit the shows and attractions. It is alleged, and not denied, that on the strength of the city's license and express authorization the plaintiff and his associates have invested $1,000,000 in the business or enterprise. The place is thronged by thousands of men, women, and children from the city proper. The plaintiff's enterprise is conducted this year in the same way as in the past seven years. Not a single case of disorder or complaint of violation of decency or propriety is made. To shut it down summarily on Sunday means ruin and demoralization to the enterprise and interferes with what I think is the innocent recreation and enjoyment of its patrons. The injury caused by the injunction is trivial; the injury caused by refusing it, if it is hereafter decided that the mayor is wrong in his position, is incalculable and irremediable. These are all familiar equitable rules compelling the issuance of preliminary injunctions pending a trial of the issues.

I do not decide on this preliminary hearing that the exhibitions in Luna Park are not common shows and subject to license. I do not decide that the mayor has not the power to limit licenses to six days. I do not decide that the opening and operating of Luna Park on Sunday is legal. These matters should be deliberately tried and determined by a judgment of the court. I do say that in this particular case, on the facts disclosed in the plaintiff's papers and uncontradicted, the summary closing of this place on Sunday without trial and without a hearing, simply because the mayor has changed the form of license

and has apparently changed his opinion as to the propriety of Sunday exhibitions, would be unjust and inequitable.

The motion is therefore granted, upon condition that plaintiff stipulates to move this case for trial at the October Special Term and to be then ready to try it. The order must also provide that it shall in no way interfere with the police in their regular duty of supervision and inspection of the premises or prevent their making arrests if the law be violated in any other respect than the alleged violation by reason of the absence of a seven-day license.