(139 App. Div. 606.)

GREDINGER et al. v. HIGGINS, Commissioner of Parks, et al.

(Supreme Court, Appellate Division, First Department. July 7, 1910.)

INJUNCTION (§ 59*)—RESTRAINING CANCELLATION OF CONTRACT—PUBLIC PARKS—PRIVILEGES.

A New York park commissioner, after advertising for bids, contracted the privileges at a park to complainants for five years at a specified rental, unless the agreement was sooner revoked, because of failure of complainants to observe, keep, or perform any covenant on their part. Complainants made the first annual payment and expended $2,800 in repairs on the buildings, etc., when, without any default, they were ordered to vacate on May 7, 1910, on the ground that two of the buildings were to be torn down as interfering with the development of the park. It appeared, however, that no plan for the improvement of the park requiring the demolition of the buildings had been made, and that there was no real necessity for the immediate removal of the buildings, and that complainants' ejection was not in good faith. Held, that complainants had no adequate remedy at law, and were entitled to enjoin the city and park commissioner from interfering with the buildings until it was at least determined that their removal had been ordered in good faith and for the purpose of enabling the commissioner to execute a plan for development of the park system, which had been determined upon and which was about to be executed.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 114, 116; Dec. Dig. § 59.*]

Ingraham, P. J., dissenting.

Appeal from Special Term, New York County.

Suit by Bernard Gredinger and another against Thomas J. Higgins, Commissioner of Parks for the Borough of the Bronx, City of New York, and another. From an order denying plaintiffs' motion for continuance of a temporary injunction, they appeal. Reversed, and motion granted.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and MILLER, JJ.

Norbert Blank, for appellants.

Theodore Connoly (Clarence L. Barber, on the brief), for respondents.

LAUGHLIN, J. On the 24th day of November, 1909, the department of parks, by the commissioner of parks for the borough of the Bronx, after advertising for sealed proposals for the privileges, made a formal agreement in writing with the plaintiffs by which, as therein recited, "in order to promote and increase the public enjoyment of the public park known as Crotona Park," the plaintiffs were granted "a license, permit, or privilege to sell refreshments (spirituous liquors excepted), let skates, and check coats and wraps, at the building situated near the pond in said park and used for these purposes," and were given the further privilege of renting boats and of maintaining the pagoda near the music stand for the sale of refreshments "for the term of five years from the 23d of December, 1909, unless this agreement be sooner revoked, canceled, or annulled, as herein provided."

The agreement then contains 11 covenants on the part of the plaintiffs, by which they undertook, among other things, to pay each year in ad- vance to the department of parks for the privileges concerned the sum of $276 the first year and a larger sum each succeeding year, and to keep the places open, and to keep and furnish sufficient skates, and to rent the same, and to furnish refreshments at rates, and on a scale of prices to be prescribed or approved by the department of parks, and to make all "necessary repairs, renewals, and renovations that shall be required to maintain the said building and the pagoda in good and proper condition, and to the satisfaction" of the depart- ment of parks. It was further provided that, should the plaintiffs "omit to observe, keep, or perform" any covenant of the agreement on their part, the department of parks might revoke, cancel, and an- nul the agreement, and in that event, at the expiration of five days after notice thereof, the plaintiffs agreed to cease "to exercise the privi- leges" granted and to remove from the park the property belonging to them, and that in the event of their failure to do so the department of parks might eject them without liability for damages.

It appears by the moving papers that the plaintiffs made the first annual payment in accordance with the agreement, and expended in repairs on the buildings the sum of $2,800, and incurred further lia- bility in preparing to perform the agreement on their part, and that they have not been guilty of any default or violation of their contract obligations. It further appears that on the 7th day of April, 1910, the plaintiffs were ordered by employés of the department of parks to remove their property from the pagoda, and were notified by said employés that it was to be torn down and demolished, and on inquiry of the defendant commissioner, who in the meantime succeeded the commissioner who made the agreement, they were notified that both the pagoda and the skate house were to be torn down. The defend- ants in their answer allege that the commissioner of parks, with a view to preserving and improving the ornamental features of the park, determined, on the advice of a landscape architect, that the building known as the skate house and the pagoda "are objectionable and seri- ously interfere with the proper development of the park and the con- venience and enjoyment of the people resorting thereto," but that the commissioner does not intend at present to remove the skate house, but does intend to move the pagoda from the position it now occupies, which it is claimed is at the junction of the paths leading to the music stand "and directly in the way of the approach thereto from the west," to a location "in the same portion of the park" which will be less ob- jectionable. It appears by the affidavit of the landscape architect that he recommended to the former commissioner of parks for the borough of the Bronx and to the defendant commissioner that the pagoda be moved from the place it now occupies to another point in the same portion of the park. It is fairly to be inferred from the record that the part of the park in question lies near the outskirts of the city, and that it has not been substantially improved since it was acquired for park purposes, and remains virtually in its natural state, and is for the most part covered with trees and rocks. It is not shown that any

plan for the improvement of the park, which requires that these buildings be demolished, has been made, or even that the commissioner of public parks has determined upon a plan of improvement, which requires that they be demolished; nor is any real necessity shown for the immediate removal of the pagoda from the site it now occupies.

We do not deem it necessary at this time to decide whether the agreement is in all respects valid and binding upon the defendants, but very likely it must be deemed to have been made and accepted subject to the authority of the defendants to develop and improve the park. As already observed, however, there is no evidence that a plan for the improvement of the park has been adopted, which requires the removal or demolition of the buildings, and there is evidence tending to show that the contemplated action of the park commissioner is not in good faith, with a view to improving the park, but that, on the contrary, he is actuated by bad faith and ill feeling toward one of the plaintiffs. If the agreement be valid and binding on the defendants, in the absence of a breach thereof by plaintiffs, until the destruction or removal of the building becomes necessary in the development of the park, then it is apparent that the plaintiffs have no adequate remedy at law. In view of the facts that an officer of the city, having jurisdiction over the park, made the agreement, that the city has received the license fee or charge exacted for the exercise of the privileges conferred for a year which has not expired, and that the plaintiffs have been induced on the faith of the agreement to make this large expenditure of money, good faith requires that the plaintiffs should be allowed the enjoyment of the privileges until it is at least determined that the removal or demolition of the buildings has been ordered in good faith and for the purpose of enabling the commissioner of parks to execute a plan or development of the park system which has been determined upon and which is about to be executed. See Gushee v. City of New York, 42 App. Div. 37, 58 N. Y. Supp. 967.

It follows, therefore, that the order should be reversed, with $10 costs and disbursements, and motion for continuance of injunction granted, with $10 costs.

CLARKE, SCOTT, and MILLER, JJ., concur. INGRAHAM, P. J., dissents.