## SUPREME COURT — SPECIAL TERM —
### ALBANY COUNTY.

#### May, 1917.

## EDWARD J. MANNIX v. J. SHELDON FROST,
### as Commissioner.

#### (100 Misc. 36.)

CONSTITUTIONAL LAW—PROVISIONS OF ORDER OF BOARD OF HEALTH OF CITY
   OF ALBANY IN RELATION TO SELLING MILK—ACTIONS—WHEN IN-
   JUNCTION PENDENTE LITE DENIED.

   Order No. 31 of the board of health of the city of Albany, which
   provides that no milk dealer shall sell loose or dipped milk in the city
   of Albany after April 1, 1917, is constitutional, and in an action
   brought to determine the validity of said order an injunction *pendente
   lite* will be denied.

MOTION for an injunction *pendente lite*.

*Louis F. O'Neill*, for plaintiff.

*Arthur L. Andrews*, for defendants.

RUDD, J.:

The plaintiff moves, under an order to show cause, for an
injunction *pendente lite* restraining defendants from enforcing
order No. 31 of the board of health of the city of Albany, which
order provides that no milk dealer shall sell loose or dipped
milk in the city of Albany after April 1, 1917.

The ground upon which the motion is based is that the order
is unconstitutional and therefore void.

The complaint recites that the plaintiff for more than twenty

years has been a retail dealer in milk and cream, and during all of that time has sold such articles in the city of Albany at retail, and that he has established a large and profitable business and that he intends to continue such business after April 1, 1917; that he has invested large sums of money in building up the business; that William V. R. Erving was commissioner of public safety of the city of Albany, N. Y., and has been succeeded by J. Sheldon Frost who has been substituted as defendant in this action as such commissioner; and the defendant Arthur Sautter is health officer of the city of Albany, N. Y., and that such commissioner of public safety and the health officer constitute the board of health of the city of Albany.

Plaintiff alleges that the defendants have assumed the authority to grant or refuse licenses for the peddling or selling of milk in the city of Albany, and without a license from the said defendants the plaintiff cannot sell or deliver his milk in the city without subjecting himself to the liability of arrest.

Plaintiff has received notice from the health officer of the city that order No. 31 will be enforced and that the health officer will refuse to grant a license or permit to sell loose or dipped milk in the city after April 1, 1917. That the penalty prescribed for a violation of the order is made a misdemeanor.

Plaintiff alleges that the order of the board of health violates the Constitution of the United States, in that it deprives plaintiff of his property without due process of law, and that it also denies plaintiff all the privileges and immunities of citizens of the several States of the Union; that he is thereby denied the equal protection of the law; and that the order also violates the Constitution of the State for practically the same reasons, as above stated, and also because it delegates to the local board of health judicial powers and judicial functions, and that the rule prohibits the sale of a wholesome article of food not prohibited from sale by any law of the State of New York.

It is also alleged that the order is unconstitutional in that

it is unreasonable and against public policy and in restraint of trade, and that it is not a health regulation within the police power of the State.

Plaintiff alleges that unless the defendants are enjoined from enforcing the order he will suffer irreparable injury and damage, for which he has no adequate remedy at law.

The defendants have filed an answer to the complaint, and the question now is whether this court will grant an injunction restraining the enforcement of the order of the board of health pending the determination of the issue framed by the pleadings.

The relief demanded is entirely injunctive.

The order under consideration adopted by the health department read as follows:

### ORDER 31.

" No milk dealer shall sell loose or dipped milk in the City of Albany, N. Y.

" This order to take effect April 1, 1917. Dated, December 16, 1915.

"ARTHUR SAUTTER, *Health Officer.*

"Approved: W. V. R. ERVING, *Commissioner of Public Safety.*"

The theory upon which the plaintiff contends that justice requires the issuance of an injunction restraining the enforcement by health authorities of the city of Albany of the order in question is that the enforcement of the order would cause plaintiff irreparable injury, that it would prevent him from selling a wholesome article of food, and that in effect the order would destroy the business of plaintiff long established in the city of Albany.

Plaintiff has a milk route. The milk is brought from his farm, presumably in the country, to the city. It is contained in large cans. It is delivered to customers by dipping it from

the opened cans by means of a long-handled dipper, and the placing of it in the uncovered receptacle of the customer.

Plaintiff contends that this has been done for fifty years in the city of Albany. That no doubt is absolutely true. The question is not how long it has been done, but whether in the doing of it there is a danger or risk which can be avoided, by which the milk thus exposed in the streets of a city may become contaminated, as is well understood by those who know and appreciate the risks incident to the exposure of food to the fine particles of dirt carried by the wind in the city streets.

Unless the plaintiff is left remediless, unless his business is thus destroyed, the court would not in this preliminary stage of the litigation be justified in granting an injunction. Equity should not intervene, laying its hand upon the property and rights of the plaintiff, if there is left to plaintiff a legal remedy, or a legal course, in which and through which his rights may be protected and his property conserved.

The plaintiff calls the court's attention to certain cases as authority under which the court is justified in granting an injunction pending the determination of the action.

In Coler v. American Society for Prevention of Cruelty to Animals (122 N. Y. Supp. 549), an injunction was granted during the pendency of the action.

The theory upon which the court acted was that it was its duty to issue a preliminary injunction when the delay until the trial would render the injunction nugatory in case it was decided that the plaintiff was correct in his contention. That case was one involving the consideration of the constitutionality of the statute of the State which gave to the defendant the power to kill under certain conditions a dog belonging to the plaintiff. Of course, if the dog had been killed and the act had been thereafter declared to be violative of the Constiution there would be no remedy, it not being possible to restore the life of the dog.

So in the case of Thompson v. McClellan (118 N. Y. Supp. 114), the court held that the enforcement of the ordinance would mean ruination to the plaintiff.

In Gredinger v. Higgins (139 App. Div. 606) the question was as to the right of the commissioner of parks of the borough of The Bronx to demolish the building in which the plaintiff had a license to sell refreshments in a park owned by the city of New York. If, pending the determination of the action, the building were destroyed it would of course leave the plaintiff without remedy.

The injunctive relief here sought by the plaintiff must depend entirely upon the allegations set forth in the complaint.

These allegations present for the consideration of the court all that there is by way of contention on the part of the plaintiff.

The court should not seek explanation of what the complaint means, or elucidation of it through affidavits presented to sustain the application by the plaintiff here made.

Upon the argument it was agreed between the parties that the order in question was the order of the board of health and not of the commissioner of public safety, so that no question here arises as to the correctness of the procedure.

The Public Health Law of the State provides as follows: " Every  *  *  *  local board shall make and publish from time to time all such orders and regulations, not inconsistent with the provisions of the sanitary code, as it may deem necessary and proper for the preservation of life and health and the execution and enforcement of this chapter in the municipality."

The order in question is not inconsistent with the provisions of the Sanitary Code.

The Sanitary Code provides: " No corporation, association, firm or individual shall sell or offer for sale at retail milk or cream in any municipality without a permit from the health officer thereof, *which shall be issued subject to such conditions as may be imposed by this code by the local health officer."*

Also: " Milk and cream to be kept only under sanitary conditions. No milk or cream shall be sold or kept for sale under any conditions which, in the opinion of the local health officer, are not clean and sanitary.

"All vessels containing such milk and cream for sale shall, at all times, be covered, kept cool and so placed that the contents will not be exposed to sun, dust, dirt, flies or other insects."

Also, " The health authorities of any municipality may in their discretion increase the stringency of these regulations, or add to them in any way not inconsistent with the provisions thereof."

The chief milk inspector of the city of Albany, John F. Miller, shows by affidavit that less than one-third of the quantity of milk consumed in the city daily is affected by the regulation under order No. 31. More than one-half of the daily milk supply of the city is sold and delivered in bottles at the present time.

A large percentage of adultered milk has been shown by official government inspection in the examination of loose or dipped milk obtained from the cans of dealers delivering milk in that way. A similar examination of samples of bottled milk shows a small percentage of adulterated milk.

The bacterial count of loose or dipped milk shows a very much larger percentage than does the bottled milk.

The affidavit of the health officer of the city shows that a permit will be granted to the plaintiff to sell milk and cream in Albany after April 1, 1917, upon application therefor, subject. to the provisions of order No. 31.

This means that it is not a regulation or order which prohibits the plaintiff from selling or delivering milk, and, therefore, as is contended, prevents him from selling a wholesome article of food, but it does regulate the manner in which he shall sell, in substance providing that milk delivered from door to door in the public streets of the city shall not be subject to con-

tamination which comes from its exposure on public streets of a city, but that it shall be delivered in containers, which to a degree at least will eliminate and prevent the contamination to which otherwise the milk or cream might be exposed.

The whole object of the law and of the regulation, and the effect of the legislation, and the purpose of the agricultural department and the municipal government, is not only to see that the milk comes to a proper standard, that it is placed in vessels or containers which are clean, but that it shall be finally delivered to the actual consumer as free from contamination and deleterious substances as it is possible.

The health officer shows, by affidavits here presented, that in his opinion loose or dipped milk taken from forty-quart cans, in accordance with the practice prevailing in the city of Albany by the plaintiff and some other dealers, because of the exposure necessarily incident to the uncovering of the can each time the milk is dipped therefrom, is not a method which is clean or sanitary. It also appears from an affidavit here presented that twenty-one cities in the State of New York, and a great many cities throughout the other States of the Union, are operating under an ordinance and regulation prohibiting the sale of loose or dipped milk, and under in fact an ordinance or regulation similar to the one in question.

It seems that among our neighbors in the city of Schenectady, which in recent years has come to be a large city, there has been in operation and effect since the first day of July, 1915, a regulation similar to order No. 31.

It also appears from the affidavit of the chief milk inspector of the city of Schenecady that all of the dealers in milk who had sold loose or dipped milk previous to the Schenectady ordinance of July, 1915, continued business and operated under the ordinance with the new regulation, and no one of which dealers by reason of such regulation retired from business.

The fact that the plaintiff alleges in his complaint that he

will suffer great or irreparable injury, unless such allegation is supported by the facts, is not sufficient to warrant this court in granting the injunctive relief.

The contention by plaintiff that the sale of loose or dipped milk is not prohibited by any law of the State is certainly questionable, in view of the quotation above made from the Sanitary Code, which was adopted by the public health council of the State, for that code clearly prohibits the sale of milk or cream in containers which in the opinion of the local health officer are not clean and sanitary, and it also further provides that vessels containing milk or cream for sale at all times be kept covered, kept cool and so placed that the contents will not be exposed to sun, dust, flies, or other insects.

It is not entirely essential in order that the rights of the plaintiff may be protected -that a court of equity should pass upon the constitutionality of the order in question. The plaintiff has a right to test this matter in a court of law. A violation of the ordinance by him would soon afford him in a court of law an opportunity to obtain the relief which he here seeks by a determination as to whether the order is constitutional or otherwise. Complete relief would be secured to the plaintiff by making a defense in an action for the enforcement against him of the penalty for the sale by him of milk without a license. Courts ordinarily do not restrain the prosecution at law.

Justice CHESTER, in Schulz v. City of Albany (27 Misc. Rep. 51, affd., 42 App. Div. 437), held that an equitable action brought to restrain the city from constructing a sewer by virtue of what was claimed to be an illegal city ordinance would not lie until such illegality had been determined at law.

Numerous cases are found in the books to the same effect.

The question fairly presented to the court upon the motion made for an injunction, as to the reasonableness of order No. 31, is here under consideration.

The regulation does not prohibit the sale of milk; it only

regulates the manner in which it shall be distributed. The effort is entirely in keeping with the serious and intelligent effort which is being made in every direction to protect and guards the lives and health of the people in the congested centers of population.

The largest percentage of milk consumed is that furnished to infants, who are the most susceptible to the results of unsanitary conditions and environment.

There are to-day regulations in force in every city in the land which during the early years of the last generation were unheard of and would have then been considered unnecessary and unreasonable. That which is required to-day as essential may have been among the non-essentials of yesterday.

The regulation is not in the interest of any particular bottle or container; it simply prohibits the exposure of milk distributed at the houses of the people along the city streets, to the end that the milk delivered will come to the customer in practically the same sanitary condition as when it left the farm.

The fact that plaintiff has delivered milk, and has been permitted to deliver milk, dipped and loose from forty-quart cans for so many years to so many customers, is not at all controlling.

The standard of milk is specified under the law. Constant inspection is being made to see that such standard prevails. The cleanliness of the can or container is specified; milk, exposed to the dirt, dust and flies which are necessarily incident to the city streets upon which traffic is constantly increasing, may entirely overcome and render nugatory these preliminary efforts which may have been made to render the character of the milk pure and wholesome.

It has been held that it was proper to delegate such a power to the health regulating authorities of a municipality.

The city board of health has power to enact a sanitary ordinance having the force of law within the jurisdiction of the board. (Polinsky v. People, 73 N. Y. 65.)

A board of health is clothed under the law with summary powers to protect the people of a community as against the conditions which affect the health and lives of the community.

In People v. Frudenberg (209 N. Y. 218) it was held that section 183 of the Sanitary Code of New York City, which provides that no person shall receive or have in his possession any receptacle which is used in the transportation or delivery of milk or cream which has not been washed, or which is unclean in any way, is a fair, reasonable and appropriate exercise of the police power of the city in its general scope.

The intention of that section of the Sanitary Code is to protect the health of the people, and the courts should give to such an ordinance a liberal interpretation.

The recent decision in People ex rel. Schulz v. Hamilton (97 Misc. Rep. 437), is a judicial interpretation of a rule promulgated by the commissioner of public safety in the city of Rochester imposing as a condition for the issuance of a license to sell milk in the city the requirement of a blood test, to ascertain whether or not the proposed licensee may be a carrier of typhoid fever germs.

It was there held that this test was but one of the precautions deemed necessary to provide for the people of the city a pure and wholesome supply of milk and cream, free from disease germs.

This precaution was evidently in anticipation of the dangers of an epidemic to which, without the precautionary measure, the people might be subjected.

The court held that it was fully as important that the commissioner of public safety should anticipate dangers to public health and provide against them, as to take any steps after the disease has come to eradicate the conditions.

The police power of a city means a power to prevent, an anticipation of danger to come, an active and earnest interest

to protect the people, and in so doing to curb and restrain the individual tendency.

Modern bacteriological research has made it possible for us to understand and know the cause of disease, and the science of preventive medicine has developed to an extent and to a degree of efficiency heretofore unknown in the world.

Within a comparatively recent period of time the world has learned the cause of yellow fever and of typhus fever, and the dangers to the people from a contaminated water or milk supply.

We have recently learned of the possibilities of the transmission of poisons which inoculate the human system with germs of diseases carried by flies and other insects.

As has been before stated other municipalities have taken precautionary measures, through the authorities vested with such responsibility, and the city of Albany should be no exception to the rule, which is the result of modern and skillful recognition of conditions and of dangers against which the people by right should be protected.

The order in question was adopted in 1915. The milk dealers of the city were given until April 1, 1917, that they might provide themselves with the implements for the doing of the business of the delivery of milk in the streets of Albany in accordance with the provisions of the order in question.

There is no hardship to plaintiff. It means simply that the milk or cream delivered by him must be covered. It must not be dipped and exposed to the air.

A large number of milk dealers in this city are already serving the people with milk thus protected.

Plaintiff's business is not ruined. There is and can be no irreparable damage. His property is not taken without compensation. The same rule applies to him as to others engaged in a similar business in the same locality.

From any and all angles there seems to be no question but what the board of health acted well within the scope of its authority, and wisely.

The precautionary step taken by the board of health should be commended by the courts, as it no doubt will be approved by the people.

The motion for an injunction pending the determination of this action is denied, with costs.

Motion denied, with costs.