PEOPLE ex rel. THOMAS L. OGDEN, Relator, *v.* PATRICK ALOYSIUS McGOWAN, a Police Officer of the City of Poughkeepsie, Defendant.*

Supreme Court, Dutchess County, July, 1921.

*Public health — city of Poughkeepsie — sale of milk, except Grade A raw and certified, may be prohibited, unless pasteurized.*

HABEAS CORPUS.

*S. D. Brown*, for relator.

*George Worrall*, for defendant.

MORSCHAUSER, J. The question for determination is the regulation of the board of health passed July 20, 1920, taking effect May 1, 1921.

The board of health of the city of Poughkeepsie on July 20, 1920, made and published a regulation that in effect prohibits the sale of any milk in Poughkeepsie except what is designated grade A raw and certified milk, unless the same is pasteurized.

The dealers in milk were given until May 1, 1921, to prepare to meet the conditions imposed upon them by the regulations.

Ordinarily, milk is produced under circumstances which favor the introduction of dirt. The udder of the cow is not normally clean; stables where cows are kept naturally collect manure, dirt, dust and flies, and milk is seldom if ever produced without contamination to a greater or less degree by some of these substances. Invariably accompanying and intimately associated with dirt, are bacteria which are far more injurious than the dirt itself. These organisms may be derived from the udder of the cow, or may have their source from the dirty condition of stables, or from contami-

---

* Affirmed 200 App. Div. 836, without opinion.— [REPR.

nation in handling the milk. Milk is the ideal medium for the growth of bacteria affording the necessary elements for their development and immediate multiplication ensues. A supply which originally contained but a few hundred bacteria to a cubic centimeter (one-fourth of a tablespoon) may within a few hours be transformed into one containing thousands or even millions. Among these bacteria are many that are harmless and some that are necessary, but there may also be disease germs. Some of the fatal diseases known to be conveyed by milk are typhoid fever, malaria, scarlet fever, tuberculosis, diphtheria, septic sore throat, diarrhea and enteritis.

In order to guard against the introduction of disease germs into the milk, provision is made for the inspection of dairies, and the tests of the cows for tuberculosis. These measures do result in some protection to the consumers of milk; but however thorough the inspection of the dairies may be, it does not afford absolute protection against disease, and a further means of safeguarding the milk is afforded by pasteurization.

Certified Milk. Cows must be tuberculin tested once during previous year and reactors excluded; farms must be scored not less than thirty-five per cent for equipment and fifty per cent for methods; employees must be examined by physicians; milkers to wear washable suits, not worn at other times; bacterial count not more than 10,000 bacteria per cubic centimeter.

Grade A Raw. Cows must be tuberculin tested once during previous year and reactors excluded; farms must be scored not less than twenty-five per cent for equipment and not less than fifty per cent for methods; milk must not contain more than 60,000 bacteria per cubic centimeter.

Grade B Raw. Cows must be healthy as disclosed by physical examination; farms must be scored not less than twenty-three per cent for equipment and not less than thirty-seven per cent for methods; milk must not contain more than 200,000 bacteria per cubic centimeter.

It is claimed that milk of all these grades should be delivered to the consumer within thirty-six hours of the time of milking.

Pasteurization. To be pasteurized milk must be subjected to a temperature of 142 to 145 degrees Fahrenheit for not less than thirty minutes. If the milk is then immediately chilled and further contamination prevented it can no longer be considered dangerous to health. Milk which has been adequately pasteurized is considered the safest milk.

We are informed that pasteurization destroys none of the constituents of milk. The taste and appearance of pasteurized milk differ but little from those of untreated milk.

The purpose of pasteurization is to kill the harmful bacteria which milk contains. For adults pasteurized milk is fully as nutritious as raw milk and digestibility of the two is the same.

The board of health had power to make the regulation.

Section 2-b of the Public Health Law gives the public health council of the state department of health power to establish a sanitary code which shall have the force and effect of law.

Section 2-c of the Public Health Law provides: " The provisions of the sanitary code shall, as to matters to which it relates, and in the territory prescribed therefor by the public health council, supersede all local ordinances heretofore or hereafter enacted inconsistent therewith. Each city, town, or village may, in the manner hereinafter prescribed, enact sanitary regulations not inconsistent with the sanitary code established by the public health council."

Section 21 of the Public Health Law provides: " Every such local board of health shall make and publish from time to time all such orders and regulations, not inconsistent with the provisions of the sanitary code, as it may deem necessary and proper for the preservation of life and health and the execution and enforcement of this chapter in the municipality."

The regulation is not inconsistent with any of the provisions of the Sanitary Code. The Code contains certain provisions concerning the grading and sale of milk.

Regulation 14 thereof provides as follows: " Supplementary regulations by local authorities. The health authorities of any municipality may in their discretion increase the stringency of these regulations or add to them in any way not inconsistent with the provisions thereof, and may prohibit the sale, or the keeping for sale, within the municipality of any of the grades of milk herein defined."

The legislature in the exercise of its constitutional authority may lawfully confer on boards of health the power to enact sanitary ordinances having the force of law within the districts over which their jurisdiction extends, and the board of health of the city of Poughkeepsie had the power and authority to make the regulation. *Polinsky* v. *People*, 73 N. Y. 65; *Fischer* v. *St. Louis*, 194 U. S. 361; *People ex rel. Leiberman* v. *Vandecarr*, 175 N. Y. 440; affd., 199 U. S. 552.

This regulation is one among the many deemed necessary to provide for the people of the city a clean, pure and wholesome supply of milk and cream, free from disease and germs. It is important to the whole community that the supply of milk and cream should not be contaminated with impurities or infected with disease, and that those selling milk should use all the pre-

cautions that a scientific investigation of the proper methods of treating milk to secure the result has found to be useful and efficient. It is the duty of the health authorities to see that this is accomplished by the establishment of such reasonable regulations as may be necessary to meet existing conditions and ward off impending dangers to the public health. In requiring the lower grades of milk to be pasteurized as a condition to the sale of milk in the city, the board of health acted within the scope of its authority. The requirement that the lower grades of milk shall be pasteurized is for the protection of public health, and every reasonable effort in this direction should be encouraged. *Mannix* v. *Frost,* 100 Misc. Rep. 36; affd., 181 App. Div. 961.

The Sanitary Code was designed to protect the public health and should receive at the hands of the court a liberal interpretation. *People* v. *Frudenberg,* 209 N. Y. 218.

Every presumption is in favor of legislative acts, and they are to be upheld unless there is a substantial departure from the organic law. *People ex rel. City of Rochester* v. *Briggs,* 50 N. Y. 553.

If the power to legislate exists, the court has nothing to do with the policy or wisdom of the interference in the particular case, or with the question of adequacy or inadequacy of the compensation authorized. Courts do not sit in review of the discretion of the legislature, or determine upon the expediency, wisdom or propriety of legislative action in matters within the power of the legislature. Every intendment is in favor of the validity of statutes; and no motive, purpose, or intent can be imputed to the legislature, in the enactment of a law, other than such as are apparent upon the face, and to be gathered from the terms of the law itself. *People* v. *Budd,* 117 N. Y. 1, 25; *People ex rel. Bolton* v. *Albertson,* 55 id. 50, 54.

The same rule applies to ordinances of municipalities. *Cronin* v. *People,* 82 N. Y. 318, 323.

The method of detecting tuberculosis in animals is by the injection of tuberculin and is generally known as the tuberculin test. Agricultural Law, § 108.

It is not necessary for the regulation to require that cows that react to the tuberculin test should be excluded from the herd, as such action is provided for by section 98 of the Agricultural Law, which provides: " If from such examination an animal be deemed to be infected with tuberculosis or any infectious or communicable disease or its condition be such as to render it undesirable for the production of milk or a menace to the health of other animals or persons, such animal shall be immediately removed from the herd, slaughtered or disposed of as the commissioner may prescribe according to the provisions of this article."

The learned counsel for the relator stated at the hearing at different times that the milk dealers would suffer great loss of property by the regulation and they would have to discontinue their business. The answer to all this is that when it becomes necessary for the health, safety and welfare of the community, individual rights must give way.

Courts will uphold the actions of public bodies when they perform their duties within the law even though such actions may be in restraint of trade or may interfere with business interests.

The rights, safety and welfare of the community are paramount to that of individuals engaged in a business that might place in danger the lives of its citizens.

Writ dismissed, relator remanded.