In the Matter of the Application by ALFRED E. JORDAN, as Mayor of the Village of Great Neck Estates, and Others, as Trustees of Said Village, Constituting the Board of Trustees, Petitioners, for a Peremptory Order of Prohibition against LEWIS J. SMITH, County Judge of the County of Nassau, and Others, Defendants.* ͦ

Supreme Court, Nassau County, May 13, 1930.

* Affd., 254 N. Y. ——.

*Van Doren, Conklin & McNevin* [*William R. Conklin, Edward S. Bentley* and *Sperry Butler* of counsel], for the petitioners.

*James L. Dowsey* [*Erastus J. Parsons* of counsel], for the defendants.

FAWCETT, J. This is an application for an order of prohibition enjoining the county judge of Nassau county from assuming the jurisdiction conferred by chapter 693 of the Laws of 1929 (which added section 249-a to the Town Law).

The Belgrave sewer district, organized under the Town Law, lies immediately to the south of the village of Great Neck Estates in Nassau county, but no part of the territory of the village is within the limits of the sewer district. The commissioners of the sewer district, being of the opinion that there was no available site within the district for the location of its proposed disposal plant, in February, 1929, applied to the trustees of the village for permission to construct its disposal plant upon a site within the territorial confines of the village. (See Village Law, § 276, as amd. by Laws of 1927, chap. 650.) The application met with a storm of protests from the residents of the village. The application was denied in April, 1929, and upon reconsideration was again denied in May, 1929. The trustees of the village claimed that available sites existed for the location of the disposal works within the district and a distinguished engineer, employed by the village, so reported. Subsequently an amended application, with amended plans, also was denied by the village trustees in November, 1929. It is claimed, and the circumstances so indicate, that, while the application was pending before the village trustees and was undetermined, the act of 1929 was passed at the instigation of the commissioners of the sewer district or its attorney. The act became a law April 16, 1929. When all conferences and negotiations had failed as aforesaid, the commissioners of the sewer district presented a petition to the county judge of Nassau county for the relief specified in the act of 1929, and the trustees of the village have made this application for a writ or order of prohibition.

In addition to other provisions, the act provides that the petition shall state that the application to the village has been " unreasonably denied, or withheld." Provision is then made for the notice to be given of the presentation of the petition and for a hearing of the parties and residents who desire to be heard. The county judge, if satisfied that such approval has been " unreasonably withheld," may by order grant the petition, and " his order thereon shall be final."

And thereupon the sewer commissioners of the district are authorized to acquire the necessary land, rights of way and easements by purchase or condemnation.

Petitioners assert that the act is unconstitutional as conferring upon a judicial officer authority and jurisdiction to decide a question not of a judicial nature. In this contention I do not agree with counsel. Legislation relating to the location and construction of a sewer is an exercise of the police power in the interest of the health and well-being of the general public. Where a sewer or drain is necessary to conserve the public health, the Legislature may " authorize it to be built anywhere, and in any form and of any needed dimensions." (*Matter of Cheesebrough*, 78 N. Y. 232, at p. 236.) Thus it was within the power of the Legislature at any time to have authorized the construction of the disposal works in a village adjoining a sewer district. But section 276 of the Village Law requires the approval of the sewer commissioners of the village to the location therein of the disposal works of any other village, town or sewer district. To a limited extent the section evidences a delegation of legislative power. Possibly the purpose was to preserve as nearly as may be the principle of local autonomy. But it was not the intent that the power of approval or disapproval should be so exercised as to imperil the general public health. Presumably the Legislature contemplated a reasonable exercise of the delegated power in view of existing physical conditions. And at any time it was within the power of the Legislature to wholly retake the power conferred on the village trustees by section 276 and resume control of all matters relating to the sewer in question. (*Matter of McAneny* v. *Board of Estimate & Apportionment*, 232 N. Y. 377, at pp. 389, 390, and *People ex rel. Morrill* v. *Board of Supervisors of Queens County*, 112 id. 585, at p. 588.)

Thus the Legislature might have repealed section 276 in its entirety. Instead, it modified the absolute character of the section by providing that the approval thereby required should not be unreasonably withheld or denied. It prescribed a method of review. This modification is accomplished by the act of 1929 as effectively as though section 276 had been expressly so amended. As a result, the power of the village trustees to disapprove is no longer an arbitrary power, but one to be exercised with the dictates of reason as guided by existing physical conditions. And clearly, it seems to me, the necessity for the location of the disposal works within the confines of the village, instead of within the sewer district, in order to conserve the public health, is a question of judicial character and one for judicial determination. This principle seems to be recognized. (*Citizens' Sav. Bank* v. *Town of Greenburgh*, 173 N. Y. 215, at pp.

228 and 229, and *Somerset County* v. *Hunterdon County*, 52 N. J. Law, 512, at p. 514; 19 Atl. 972.) Moreover the form of the act in its entirety indicates that such was the legislative view. The application to the county judge is in form judicial. He acts only after notice and a prescribed hearing. These are the indicia of judicial action.

It is claimed that the power conferred on the county judge is non-judicial because there is " here no controversy arising between adverse litigants." True, there are here no nominal plaintiffs and defendants, as in an action. Nevertheless, a controversy in fact does exist and one of greater magnitude than that involved in an action between individuals. The controversy directly concerns the general public health and welfare. Through their representatives, thousands of citizens assert that the disposal works cannot be located within the Belgrave sewer district without deleterious results to the public well-being and other thousands assert the contrary. The act provides for a settlement of this controversy before a judicial officer after a hearing of a judicial nature.

I think the word " may," as found in the phrase " he may, by order, grant the petition," must be deemed to have been used in an imperative sense. It means " shall." In the construction of statutes, words of a permissive character may be given a peremptory significance when necessary to give effect to the legislative intent. (Report of Consolidators, McKinney's Book 1, § 13.)

In enacting the statute under consideration, the intent of the Legislature was to confer authority to locate the disposal works within the territory of the village, contingent upon the determination by the county judge that the action of the village trustees in withholding consent was unreasonable. Effect can be given to this intent only by giving the word " may " a peremptory interpretation. Otherwise the act would be ineffective to carry out the legislative intent. By considering the word " may " to have been used in the sense of " shall," the act is unobjectionable as contingent legislation, the contingency upon which the act becomes effective being the determination by the county judge of the unreasonableness of the action of the village trustees. Such legislation is valid. (*People* v. *Fire Assn. of Philadelphia*, 92 N. Y. 311, at pp. 317–320.)

Upon the happening of the contingency, the right to locate the disposal works within the village is conferred by the act, not by the county judge. It seems to me that the act does not violate constitutional provisions by depriving the village or its inhabitants of property without due process of law. An act in the interest of the public health or welfare may occasion incidental injury and disadvantage to property, which must be borne without compensation.

In fact, legislation of this character, which imposes a direct financial burden, is not necessarily violative of the constitutional provisions. (*Health Department of City of New York* v. *Rector, etc., of Trinity Church*, 145 N. Y. 32.) Neither does the act, in my opinion, violate section 2 of article 12 of the Constitution. Legislation affecting the public health is not a matter of purely local concern, and does not fall within the category of " local affairs of the village," as contended by the petitioners. On the contrary, where the public health so requires, the Legislature may authorize the construction of a sewer " anywhere." (*Matter of Cheesebrough, supra.*) Neither does this legislation contravene section 18 of article 3 of the Constitution. The act does not relate to any of the prohibited matters specified in the constitutional provision. And, as before stated, in the interest of the public health, the Legislature has power to authorize the construction of a sewer in any political subdivision of the State. The exercise of such power is nowhere prohibited in the Constitution. (*Swikehard* v. *Michels*, 81 Hun, 325; affd., 144 N. Y. 684.)

It is also objected that the act violates section 16 of article 3 of the Constitution, in that it is a private or local bill embracing more than one subject, which subject was not expressed in the title. The claim seems to be that the principal purpose of the act was " to set up machinery by which the provisions of section 276 of the Village Law might be evaded and the consent required by that section of the Village Law might be dispensed with." It is asserted, therefore, that the bill embraced more than one subject-matter. I do not agree. Unless absolutely necessary from the existing circumstances and the language employed, an ulterior motive should not be imputed to the Legislature. The act is entitled, " An act to amend the town law, in relation to the location of sewer outlet or disposal works of sewer districts in Nassau county." This title seems to adequately express the primary purpose and object of the bill. The legislators, the public and the particular locality affected are so informed, and nothing is omitted from the title, the omission of which could operate as a deception. The rule is stated in this respect in *Economic Power & Construction Co.* v. *City of Buffalo* (195 N. Y. 286, 296). The reference in the act to section 276 of the Village Law is an expression of the legislative intent that the section, so far as inconsistent with the act of 1929, should be deemed to be modified or amended in accordance with the latter provision. If the act had contained no reference to this section of the Village Law, the section would have been modified or repealed by implication so far as inconsistent with the act. The rule is that a later act, as being a subsequent expression of the legislative will, must

prevail over a prior inconsistent act. (*Matter of Washington St. A. & P. R. R. Co.*, 115 N. Y. 442, at p. 449, and *Matter of Tiffany*, 179 id. 455, at p. 457.)

On its face the act of 1929 purports to be an amendment of the Town Law in relation to the location of sewers. Naturally, the reader of the title must look to the context to ascertain the nature and scope of the amendment. I do not think that the act is open to the criticism of the petitioners in this respect.

The motion is denied. Submit order.