Richard F. Daly, M.
This ease was tried before me, sitting, with defendant’s consent, as a Court of Special Sessions held by one City Magistrate. My decision, therefore, is upon the merits. The substantial facts are not in dispute.
The defendant, the owner of premises 37 Longfellow Avenue, Staten Island, New York, is charged with violating the provisions of section 143.03 of the New York City Health Code in that pursuant to notices of the Department of Health of the City of New York he has failed to connect the plumbing facilities in his residence with the municipal sewer in Longfellow Avenue.
The defendant contends that by virtue of outstanding permits for a septic tank which have never been revoked and the health *25 inspector’s admission that no health hazard or nuisance exists he is not obliged to comply with the notices.
On the trial the defendant offered in evidence permits from the Borough President and the Department of Health for said septic tank; a certificate of occupancy from the Department of Buildings; a permit from the Fire Department. The permit from the Borough President dated December 7, 1955 states “ This permit * * * is subject to revocation at any time by the Borough President The permit from the Department of Health dated December 12, 1955 states ‘ ‘ This permit shall be valid only as long as the said sewage disposal system does not create a health hazard or a nuisance.” A municipal sewer has been installed along Longfellow Avenue and connections thereto have been permitted since June 17, 1959.
The People contend that section 143.03 of the New York City Health Code automatically revoked the permits and that said section requires the defendant to connect with the sewer. The contention necessarily involves the question of the right to revoke existing permits and the application of the law relating to the exercise of the police power.
Section 558 of the New York City Charter provides that the Sanitary Code of the City of New York (now called New York City Health Code) shall have the full force and effect of law. Section 561 of the charter provides that the Board of Health may in its discretion grant, suspend or revoke permits for businesses or other matters in respect to any subject regulated by the department.
The New York City Health Code (revised Sanitary Code) was enacted by the Board of Health on March 23, 1959, but did not take effect until October 1, 1959. Part of the resolution of the Board of Health in enacting the Health Code reads as follows: “Resolved further, that all permits, approvals or certificates heretofore or which may be issued prior to the effective date of this resolution by the Board of Health of the City of New York, the Commissioner of Health of the City of New York or the Department of Health of the City of New York pursuant to the Sanitary Code of the City of New York or regulations relating to said Sanitary Code, in effect prior to the effective date of this resolution and which permits, approvals or certificates are in effect and valid on the effective date of this resolution shall continue in full force and effect until the expiration thereof, if any, unless sooner revoked by the Commissioner of Health or the Board of Health of the City of New York, hut the activities carried on under such permits, approvals or certificates shall, following the effective date of this resolution, comply in *26 all other respects with the provisions of the Sanitary Code' of the City of New York as reenacted hereby.” (Italics supplied.)
Section 143.03 of the New York City Health Code reads as follows: ‘ ‘ Sewage from any building or premises shall be discharged directly into the municipal sewage disposal system or into a facility connecting with such municipal system, but if there is no public sewer or other part of the municipal sewage disposal system to which connection can be made from the building or premises concerned, or if it is impracticable to discharge sewage from such building or premises into the municipal system, a private sewage disposal system may be used * *
The New York City Health Code is designed for the preservation of human life and for the care, promotion and protection of health. A law designed to protect the health of the public should be liberally construed and the courts should give effect to its obvious purposes. This rule of construction is well-settled in New York. In People v. Frudenberg (209 N. Y. 218) the court, in applying the rule to the Sanitary Code, stated at page 221: ‘ ‘ Section 183 of the Sanitary Code is designed to protect the public health, and it should receive at the hands of the court a liberal interpretation.” (See, also, People ex rel. Ogden v. McGowan, 118 Misc. 828; People v. Murray, 174 Misc. 251; Cranston Inc. v. Department of Health, 168 Misc. 749.)
People v. Blanchard (288 N. Y. 145) upheld the constitutionality of the legislative power of the Board of Health to add to and alter, amend or repeal any part of the Sanitary Code as well as the regulations relating to the matter contained in the said code.
Must the defendant comply with the provisions of the Health Code even though his permits have not been revoked and his septic tank has not become a nuisance?
The resolution afore-mentioned declares that defendant’s permits are still in full force and effect unless sooner revoked by the Commissioner of Health, but the ‘1 activities ’ ’ carried on under such permits, i.e., discharging the sewage from the premises, must, nevertheless, comply in all other respects with the provisions of the Health Code. The court interprets this to mean that the defendant must comply with section 143.03 of the Health Code.
Is section 143.03 of the Health Code a reasonable enactment in the exercise of the police power to avoid danger to public health?
Matter of Jordan v. Smith (137 Misc. 341, affd. 254 N. Y. 585) held that legislation relating to sewers is an exercise of police *27 power in interest of the health and well-being of the general public.
The fact that defendant’s septic tank has as yet not become a nuisance does not affect the power of the Board of Health to anticipate that possible evil or to legislate to prevent it.
The Court of Appeals in Matter of Stubbe v. Adamson (220 N. Y. 459, 469) stated: “ The legislature is justified in guarding against evils both real and fairly to be anticipated by any legislation which reasonably tends to prevent them, and it has a wide discretion in formulating the means which shall be adopted to this end. It is a sufficient basis for legislative action if only there are reasonable grounds for belief that the evil may occur, and even though there be ‘ an earnest conflict of serious opinion on the subject ’ ”.
The constitutionality and reasonableness of the regulations of our city Hospital Code were upheld in Matter of Engelsher v. Jacobs (5 N Y 2d 370, cert. denied 360 U. S. 902). In that case at page 375 the court stated: “It is clearly settled that ‘ in no case does the owner of property acquire immunity against the exercise of the police power because he constructed it in full compliance with existing laws.’ (Queenside Hills Co. v. Saxl, supra, p. 83 ; see, also, Hadacheck v. Los Angeles, 239 [U. S. 394, 410 ; Hutchinson v. Valdosta, 227 U. S. 303.) If authority is needed for such a proposition in this State, Health Dept. v. Rector, Church Wardens & Vestrymen of Trinity Church (145 N. Y. 32, 43-44) will substantiate this position.”
In Adamec v. Post (273 N. Y. 250) Judge Lehman, writing about an analogous situation and discussing the police power, stated at page 255: ‘ ‘ This court has said that there is no difference of principle but ‘ only of circumstance ’ between a legislative enactment of ‘ conditions upon complying with which the owner might be permitted to erect a structure within the limits of a city or village or for certain purposes, and the enactment of provisions which would necessitate the alteration of structures already in existence.’ In both cases the enactment is an attempted exercise of the police power ‘ in order to secure the general comfort and health of the public ’ and in both cases the use of his property by the owner is ‘ circumscribed and limited, what might otherwise be called his rights are plainly interfered with, and the justification therefor can only be found in this police power. ’ (Health Department v. Rector, etc., of Trinity Church, 145 N. Y. 32, 45.) ”
On page 259 Judge • Lehman further stated: “ The imposition of the cost of the required alterations as a condition of the continued use of antiquated buildings for multiple dwellings may *28 cause hardship to the plaintiff and other owners of ‘ old law tenements ’ but, in proper case, the Legislature has the power to enact provisions reasonably calculated to promote the common good even though the result be hardship to the individual. ‘ It is not the hardship of the individual case that determines the question, but rather the general scope and effect of the legislation as an exercise of the police power in protecting health and promoting the welfare of the community at large. It is a well-recognized principle in the decisions of the State and Federal courts that the citizen holds his property subject not only to the exercise of the right of eminent domain by the State, but also subject to the lawful exercise of the police power by the Legislature; in the one ease property is taken by condemnation and due compensation; in the other the necessary and reasonable expenses and loss of property in making reasonable changes in existing structures, or in erecting additions thereto, are damnum absque injuria(Tenement House Dept. v. Moeschen, 179 N. Y. 325, 330.) ”
A case almost on all fours and in which there was a greater hardship on the owner than in this case is Hutchinson v. City of Valdosta (227 U. S. 303) which holds that it is the commonest exercise of the police power of a State or city to provide for a system of sewers and to compel property owners to connect therewith. In that case the plaintiff owned and resided on a lot of land containing about one acre situated three quarters of a mile from the main business part of a city. The lot was elevated and dry with good natural surface drainage, clear and clean of garbage or anything which would create a nuisance, free from miasmatic conditions, with a wide street on three sides and a railroad right of way and almost open country in the rear. A city ordinance was passed requiring property owners residing upon any street along Avhich sewer mains had been laid to install water closets in their houses and connect-same with the sewer. To comply -with this ordinance plaintiff would be compelled to build an addition to the house Avhich, Avith the work of connecting with the sewer and the payment for the necessary water closets, would cost her a considerable sum. That part of the city where her residence was situated was thinly settled and there was no necessity on account of health or sanitary conditions of the city or any part thereof to force her against her wish to connect a Avater closet in her house by a pipe to the main seAver. The court held that the ordinance requiring the OAvner to connect Avith the sewer Avas a proper exercise of the police power.
*29 Where legislation, such as section 143.03 of the New York City Health Code, has.a real and substantial relationship and application to an actual or manifest evil pertaining to the public health and safety, the legislation may not be said to be unreasonable, arbitrary, capricious, discriminatory or oppressive. (See Reduction Co. v. Sanitary Works, 199 U. S. 306 ; City of Rochester v. Gutberlett, 211 N. Y. 309 ; Town of Newtown v. Lyons, 11 App. Div. 105 ; Matter of Stubbe v. Adamson, supra ; Defiance Milk Prods. Co. v. Du Mond, 309 N. Y. 537 ; Meyers v. Town of Cornwall, 24 Misc 2d 286.)
The motion to dismiss is denied and the defendant found guilty as charged. In view of the sincerity and earnestness of defendant in contesting the charge herein, sentence is suspended.