[Civ. No. 6491. First Appellate District, Division Two.—February 21, 1929.]

ALBERT WITT, Sr., et al., Petitioners, v. FRANK J. KLIMM et al., Respondents.

Chauncey Tramutolo, Geo. M. Naus and Ruth R. Lange for Petitioners.

John J. O'Toole, City Attorney, Henry Heidelberg, Deputy City Attorney, and Arthur H. Barendt for Respondents.

PRESTON (H. L.), J., *pro tem.*—This is an original proceeding in *mandamus.*

The petitioners seek an order of this court compelling the Board of Health and Milk Inspection Service of the City and County of San Francisco to issue to them a permit to distribute and sell in San Francisco milk produced, pasteurized, and bottled in Colma, San Mateo County, California.

The facts are not in dispute and are briefly these: Petitioners are dealers in milk, which they produce, pasteurize and bottle at Colma, San Mateo County, California. They have applied for a permit to sell "Grade A Pasteurized Market Milk" in the city and county of San Francisco, which has been refused by the Department of Health on the ground that San Francisco ordinance No. 7025 (N. S.) *requires such milk to be pasteurized within the city and county of San Francisco.* The real and personal property used at Colma by petitioners in the conduct of their dairy business has a value in excess of $100,000, and includes dairy cows, a pasteurizing plant, cow barns, milking barns, etc. They produce and pasteurize not less than eight hundred gallons of "Grade A Pasteurized Market Milk" per day.

The Pure Milk Law of California (Stats. 1927, p. 1944), establishes uniform regulations for the production and sale of milk within the state. Section 4 (a) thereof provides for the establishment and maintenance of a milk inspection service and laboratory by counties, or groups of counties; cities, or groups of cities, or groups of cities and counties.

Pursuant to this authorization, the county of San Mateo has established and now maintains in connection with its health department such a milk inspection service, which has been, and now is, approved by the director of agriculture

of the state of California, in accordance with the authority granted to him by section 4 (d) of said Pure Milk Law of California.

The city and county of San Francisco maintains a similar approved milk inspection service. The milk produced by petitioners is produced under the supervision of the milk inspection service of San Mateo County. Section 5 of said Pure Milk Law of California provides that it shall be unlawful to sell guaranteed "Grade A or Grade B Milk," except under the supervision of an approved inspection service, and further provides that milk so produced under such supervision may be sold "in territory within the jurisdiction of any other milk inspection service, if the consent of said other milk inspection service has been obtained."

The pasteurizing plant operated by petitioners in Colma is situated less than two miles from the south boundary of the city and county of San Francisco. The milk pasteurized and bottled at this plant can be transported across the county line and into San Francisco by automobile trucks in about fifteen or twenty minutes. Petitioners now have customers in San Francisco to whom they are selling and delivering their milk in the aggregate quantity of thirty gallons per day, and contend that in the event they are permitted to sell milk in San Francisco they will be able to procure many additional customers.

As above stated, petitioners applied on May 6, 1928, for a permit to sell their pasteurized milk within the city and county of San Francisco, and on May 8, 1928, the Board of Health of said city denied petitioners' application for a permit on the sole ground that the pasteurized milk which petitioners desired to sell in San Francisco "*was not and is not to be pasteurized within San Francisco* as required by sub-division 10 of Section 3 of said Ordinance No. 7025, which provides: . . . All milk intended for human consumption, in San Francisco, that comes from cows that have not passed the tuberculin test, except when sold in bulk to the wholesale trade, *shall be pasteurized in San Francisco in accordance with the method set forth herein.* . . . "

The milk pasteurized by petitioners in their plant at Colma is pasteurized according to the method outlined in the above ordinance, and the Colma plant is equipped as required in said ordinance, and the "Grade A. Pasteurized

Market Milk'' produced by petitioners conform to the standard established by the said Pure Milk Law.

Petitioners contend that the ordinance in question is unconstitutional for various reasons, among them being that it is unreasonable and unduly oppressive and makes an arbitrary discrimination against outside producers of milk.

The ordinance in question is a health ordinance prescribing, among other things, what is required of dealers in fourth-grade milk in order to sell the same within the city and county of San Francisco, to wit, it must be pasteurized within the city and county of San Francisco and under the immediate supervision of respondents.

It is not denied by petitioners that the city and county of San Francisco has the power under section 11 of article XI of the constitution to enact police regulations and ordinances promoting considerations of public welfare, public morals, public health, and public safety, provided that such regulations and ordinances are not in conflict with general laws. It is also admitted that the charter of the city and county of San Francisco vests in the board of supervisors power to enact all those ordinances necessary for the protection of the public health, so long as such ordinances are not in conflict with the state law.

As we have noted above, the legislature has seen fit to enact the ''Pure Milk Law of California,'' which prescribes certain general rules applicable in all cities and elsewhere in California, regulating the production and sale of milk for human consumption. This law, however, does not prohibit the enactment of additional local regulations by municipalities in keeping with the purpose of said ''Pure Milk Law,'' so long as the requirements of the municipal ordinance are not in themselves pernicious, as being unreasonable or discriminatory. There may be different regulations without a conflict. (*Ex parte John,* 17 Cal. App. 58 [118 Pac. 722]; *Ex parte Hong Shen,* 98 Cal. 681 [33 Pac. 799]; *In re Murphy,* 128 Cal. 29 [60 Pac. 465]; *In re Hoffman,* 155 Cal. 114 [132 Am. St. Rep. 75, 99 Pac. 517]; *In re Iverson,* 199 Cal. 582 [250 Pac. 681].)

*In re Iverson, supra,* the court said: ''Where the legislature has assumed to regulate a given course of conduct by prohibitory enactments, a municipality with subordinate

power to act in the matter may make such new and additional regulations in aid and furtherance of the purposes of the general law as may seem fit and appropriate to the necessities of the particular locality and which are not in themselves unreasonable.''

█ The provisions of the ordinance requiring that the milk be pasteurized within the city and county of San Francisco is simply a new and additional and more stringent regulation than that contained in the state law on the same subject. These requirements of the ordinance are not in themselves unreasonable or discriminatory and do not conflict with the state law, therefore, both may stand.

The ordinance is not destructive of petitioners' business. There is nothing in the ordinance to prevent petitioners from selling their milk in San Francisco; they only have to pasteurize their milk within the city and county of San Francisco, the same as all other outside dealers in milk are doing. It is an admitted fact that practically all of the pasteurized milk sold in San Francisco is produced from outside the said city, and is sent into the city for pasteurization before being sold for human consumption. Petitioners, like other producers outside of the city and county of San Francisco, must comply with this ordinance. This is not unduly oppressive on petitioners. A great deal of the milk comes from other counties into San Francisco, such as Alameda, Contra Costa, Marin and even Sonoma, and all these producers conform to the ordinance, and petitioners live within two miles of the city limits and are, therefore, more fortunately situated than a great many of the other outside dealers in milk. Furthermore, petitioners knew, or should have known, at the time they erected their plant at Colma of the existence of the ordinance in question.

If petitioners' contention be sound and the Health Department of the City and County of San Francisco be required to go to Colma and there inspect petitioners' pasteurization plant, there would be nothing to prevent all outside dealers in milk from requiring the same thing, and the Health Department would be called upon to make inspections of pasteurization plants in many of the other counties of the state, such as Alameda, Solano, Contra Costa and possibly others. It goes without saying that such a requirement of

the Health Department would not only be unreasonable and exceedingly expensive, but it would seriously impair, if not wholly destroy, the efficiency of the entire inspection service.

The matter of pasteurization of milk before being sold for human consumption has been the subject of ordinances in many of the large cities of the United States, and many of such ordinances have been reviewed by the courts of last resort in many of our sister states. The supreme court of Illinois, in the case of *Koy* v. *Chicago,* 263 Ill. 123 [Ann. Cas. 1915C, 67, 104 N. E. 1104], in passing upon and holding valid an ordinance of the city of Chicago, requiring the pasteurization of all milk for human consumption and that pasteurization plants be equipped in a certain way, used the following language which is particularly appropriate in the case at bar, to wit: "There is no article of food in more general use than milk; none whose impurity or unwholesomeness may more quickly, more widely and more seriously affect the health of those who use it. The regulation of its sale is an imperative duty which has been universally recognized. This regulation in minute detail is essential, and extends from the health and keeping of the cows which produce the milk, through all the processes of transportation, preservation and delivery to the consumer. Not only may laws and ordinances require that milk offered for sale shall be pure, wholesome and free from the bacilli of any disease, but they may and do in order to produce this result, prescribe the manner in which such purity, wholesomeness and freedom from disease shall be secured and made to appear. The cows may be required to be registered with a designated public authority; the dairies to be conducted and managed according to prescribed regulations, and together with the dairy utensils, subjected to inspection; the receptacles in which milk is contained to be of prescribed character and capacity; the labels to be placed according to fixed regulations and to contain certain required information; the milk to be prepared in the manner, at the times and by the means directed and at all times to be subject to inspection. These may be drastic restrictions upon a private business, but experience and the increasing knowledge of the causes of disease and the agencies of its propagation have demonstrated the necessity of such restrictions

to the preservation of the public health. The object of all such restrictions is the preservation of the public health, and as a means to that end the protection of the general public against dishonest vendors of milk. They all impose inconveniences and expense upon the dealers in milk, but they are not on that account unreasonable, unjust, or oppressive. Legislatures and city councils, in the exercise of the police power, may prohibit all things hurtful to the health and safety of society even though the prohibition invade the right of liberty or property of an individual. . . . ''

Although we have not discussed in detail all the attacks made by petitioners upon said ordinance, we have, nevertheless, carefully considered them all and we are of the opinion that none of them is sufficient to invalidate the ordinance, and that a further detailed discussion is unnecessary. We think the ordinance in question is a valid exercise of the police power of the city and county of San Francisco, enacted and enforced in the interest of public health, and should be upheld.

The writ is denied.

Koford, P. J., and Nourse, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on March 21, 1929, and a petitioner's application to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 22, 1929.

All the Justices present concurred.