[S. F. No. 16105.   In Bank.   Apr. 2, 1942.]

NATURAL MILK PRODUCERS ASSOCIATION OF CALIFORNIA (a Corporation) et al., Appellants, v. THE CITY AND COUNTY OF SAN FRANCISCO (a Municipal Corporation) et al., Respondents.

Philip S. Ehrlich, Albert A. Axelrod and Julien R. Bauer for Appellants.

John J. O'Toole, City Attorney, and Henry Heidelberg, Deputy City Attorney, for Respondents.

Sullivan, Roche & Johnson, Eustace Cullinan, Jr., Bartley C. Crum, Chauncey Tramutolo and Pillsbury, Madison & Sutro, as Amici Curiae, on behalf of Respondents.

CARTER, J.—Plaintiffs appeal from a judgment for defendants in an action to have enjoined the enforcement of an ordinance of the city and county of San Francisco regulating the sale and distribution of milk in that city and county.

Plaintiffs' attack on the ordinance is based upon their claim that it is arbitrary and unreasonable, in contravention

of their constitutional rights and is, in conflict with the state law on the subject covered thereby.

The ordinance contains comprehensive regulations for the sale and distribution of milk for human consumption in the city and county of San Francisco and imposes a penalty for a violation of its provisions. In the prayer of their complaint, plaintiffs ask for an injunction restraining the enforcement of subdivisions 1, 2, 3, 4, 7 and 12 of section 3 of the ordinance, and from preventing them from selling and distributing "guaranteed raw milk." Section 1 of the ordinance authorizes one of the defendants, the Director of Public Health of the City and County of San Francisco, to enforce the ordinance. Section 2 defines the various terms used in the ordinance. Market milk is defined as milk or cream in their natural fluid state as prepared for human consumption. Adulterated, impure, unhealthy and unwholesome milk is defined in part as milk from cows which have not passed the tuberculin test. Section 3 provides in part: "MARKET MILK FOR SALE AND DISTRIBUTION FOR HUMAN CONSUMPTION IN THE CITY AND COUNTY OF SAN FRANCISCO SHALL CONSIST OF THE FOLLOWING GRADES OF MILK: (a) certified milk, (b) guaranteed pasteurized milk, (c) Grade A pasteurized milk, and (d) Grade B pasteurized milk, and no other milk shall be sold, offered or exposed for sale, exchanged or delivered for human consumption within the City and County of San Francisco. Provided, that Grade B pasteurized milk shall be sold, offered or exposed for sale, delivered or exchanged only for cooking and baking purposes. Provided further, that nothing herein contained shall prevent the delivery and sale of Raw Guaranteed Milk, Raw Grade A Milk or Raw Grade B Milk to wholesalers or to pasteurization plants for the purpose of pasteurizing the same.

"SUBDIVISION 2. CERTIFIED MILK: Certified milk is market milk which conforms to the rules, regulations, methods and standards for the production and distribution of certified milk adopted by the American Association of Medical Milk Commissions and must bear the certification of the Milk Commission of the San Francisco Medical Society. Certified milk must be the produce of a dairy herd that shall consist solely of cows which have passed the tuberculin test in the manner prescribed by said Milk Commission. It must not contain more than 10,000 non-pathogenic bacteria per milliliter of

milk, which standard must be attained solely by measures directed towards cleanliness, proper cooling and prompt delivery. Certified milk must contain not less than three and five-tenths (3.5) per cent of milk fat and a minimum of solids not fat of eight and five-tenths (8.5) per cent. Certified milk must be handled and delivered in sealed containers and on ice within thirty hours after its production and in the manner directed by said Milk Commission. The dairy farm milk room, milkers and dairy utensils, etc., must all conform to the requirements of the said Milk Commission.

"SUBDIVISION 3. GUARANTEED MILK PASTEURIZED: Guaranteed pasteurized milk shall conform to the following requirements as a minimum. The health of the cows shall be determined by physical examination at least once each month by an official representative of an approved milk inspection service and by a tuberculin test. It shall be produced on dairies which score not less than ninety per cent on the dairy farm score card adopted by the Department of Agriculture of the State of California. It must be delivered in containers having the pouring lip completely protected from contamination and shall be cooled immediately after being drawn from the cow to fifty degrees Fahrenheit or less, and so maintained until delivered for pasteurization, when it shall contain not more than fifteen thousand non-pathogenic bacteria per milliliter, and not less than three and one-half per cent of milk fat. It must be sold to the consumer within thirty hours after production and shall be labeled to indicate the date of sale to the consumer. All persons who come in contact with the raw guaranteed milk must exercise scrupulous cleanliness and must not be afflicted with any communicable disease or in a condition to disseminate the germs of typhoid fever, tuberculosis, diphtheria or other communicable disease liable to be conveyed by the milk. The absence of such germs in all such persons shall be determined by bacteriological and physical examination under the direction of the Department of Public Health of the City and County of San Francisco, conducted at the time of employment and every six months thereafter in a manner approved by the Department of Agriculture and the Director of Public Health. When pasteurized it shall contain not more than three thousand non-pathogenic bacteria per milliliter at the time of delivery to the consumer.

"Guaranteed milk when raw shall be delivered in sterile

containers to pasteurizing plants located in the City and County of San Francisco, to be there pasteurized and thereafter distributed in the manner provided by the regulation of the Director of Health of the City and County of San Francisco.

"SUBDIVISION 4. GRADE 'A' PASTEURIZED MILK: Grade 'A' Pasteurized Milk shall conform to the following requirements. It shall be the produce of healthy cows as determined by physical examination at least once in two months by a veterinarian under the supervision of the Director of Public Health of the City and County of San Francisco and by the tuberculin test by such veterinarian, or by a veterinarian approved by the State Department of Agriculture, and from dairy farms scoring not less than 75 per cent on the score card approved by the Director of Public Health of the City and County of San Francisco. The tuberculin test must be repeated annually if no reacting animals are found in the herd. If reacting animals are found, they must be removed from the herd immediately and the tuberculin test repeated in six months, provided that in the first test the percentage of reacting animals found is less than 10 per cent of the herd. If the percentage of reactors found is greater than 10 per cent, the tuberculin test must be repeated in ninety days.

"All cows are to be fed, watered, housed, and milked under conditions approved by the Director of Public Health.

"All persons who come in contact with the milk must exercise scrupulous cleanliness and must not harbor the germs of typhoid fever, tuberculosis, diphtheria or other communicable diseases transmissible in milk. Absence of such diseases shall be determined by bacteriologic and physical examination to the satisfaction of the Director of Public Health.

"Grade 'A' Raw Milk from the dairy farm shall be delivered in sterile containers to the pasteurizing plants located in the City and County of San Francisco, and is to be kept at a temperature of fifty degrees Fahrenheit, or below, until it reaches the pasteurizing plant when it must not contain more than fifty thousand (50,000) non-pathogenic bacteria per milliliter and rapidly cooled after pasteurization to a temperature of fifty (50) degrees Fahrenheit or below, and so maintained to the time of delivery to the ultimate consumer.

"Grade 'A' Pasteurized Milk must not contain more than fifteen thousand (15,000) non-pathogenic bacteria per milli-

liter at the time of delivery to the ultimate consumer. . . .

"SUBDIVISION 7. METHOD OF PASTEURIZATION: Pasteurizing milk consists of the heating of every portion of the milk to not less than one hundred and forty (140) degrees Fahrenheit nor more than one hundred and forty five (145) degrees Fahrenheit and maintaining same at that temperature for thirty (30) minutes, and immediately cooling thereafter to a temperature of fifty (50) degrees Fahrenheit.

"All milk except certified milk intended for human consumption in San Francisco shall be pasteurized in San Francisco in accordance with the method set forth herein.

"Each pasteurizing plant shall be equipped with a sufficient number of self-registering devices to accurately record the temperature to which and the length of time for which the pasteurized product has been heated. Such record shall be kept for two months and be available for inspection by the Director of the State Department of Agriculture or any of his agents, and also by the Director of Public Health or his representative. . . .

"SUBDIVISION 12. METHODS OF SERVING MILK: When served in any hotel, boarding house, lunch counter, restaurant or other place of public entertainment, market milk shall be served in the original bottle in sizes ½ pints, pints, 1/6 quarts and quarts only, the cap of which shall not be removed except in the presence of the customer or patron; provided, however, that this provision shall not apply to cream so served.

"The bottling of all milk except certified milk is prohibited except in regularly approved and authorized pasteurizing plants.

"It shall be unlawful for any person, firm or corporation to sell, exchange, offer or expose for sale or exchange, or have on hand for sale or exchange or serve in any hotel, boarding house, restaurant, saloon, lunch counter or other place of public entertainment any milk or cream to which any gelatin or other substance, except as provided in the general dairy law of California, has been added to increase the consistency of such milk or cream so as to make it appear richer or of better quality; provided, however, that nothing in this ordinance shall be construed as prohibiting the standardization of milk and cream as provided in this ordinance."

Plaintiff, Natural Milk Producers Association of California, is a nonprofit cooperative corporation. It is not now engaged in and does not intend to engage in the production or sale of

milk, though its members are engaged in that pursuit in California. Plaintiff, C. B. Clowes, is producing and selling milk in San Joaquin County. Plaintiff R. W. Krobitzsch, now deceased, his legal representatives having been substituted herein in his place, was formerly engaged in selling and distributing guaranteed raw milk in San Francisco, but has sold his business. Clowes, and the successors of Krobitzsch, state that they are desirous of selling and distributing guaranteed raw milk in San Francisco. The latter are fostering a dairy herd for that purpose.

Plaintiff's first contention is that the ordinance conflicts with the state law as embodied in the Agricultural Code and is therefore invalid. That code contains a comprehensive plan for the regulation of the production, sale and distribution of milk and other dairy products in the State of California. (Agri. Code, §§ 451-734.)

It is conceded that the city and county of San Francisco possesses power to make and enforce within its limits all such local police, sanitary, and other regulations as are not in conflict with the general laws. (Cal. Const., art. XI, sec. 11.)

It is true, as a general rule, that when there is a conflict between the local police regulations and the general police regulations of the state, the former is invalid if passed after the general law or is superseded if followed by the latter. In either case the result is the same, the local law has no effective force. There is of course the qualification with respect to chartered cities in regard to local laws dealing with purely municipal affairs, with which we are not here concerned; then the local law prevails. (18 Cal. Jur. 831, et seq.; Cal. Const., art. XI, secs. 6 and 11.)

Turning to the specific claims of conflict made by plaintiffs, they assert that the Agricultural Code permits the sale and distribution of five *grades* of market milk, namely, certified, guaranteed raw, guaranteed pasteurized, grade A raw, and grade A pasteurized (Agri. Code. §§ 484, 487, 488); that the ordinance while permitting the sale and distribution of some of those grades *prohibits* the sale and distribution of two grades, that is, guaranteed raw milk and grade A raw milk; that therefore there is a conflict in that under the state law all of the grades may be sold, but on the contrary the ordinance forbids the sale of some of those grades; and that section 451 of the Agricultural Code does not negative such a conflict by permitting municipal regulations to im-

pose higher standards only for the individual grades because it does not authorize the absolute prohibition of the sale of any of the grades.

■ Independent of section 451 of the Agricultural Code, which we will hereinafter discuss, it has long been the established general rule, in determining whether a conflict exists between a general and local law, that where the Legislature has assumed to regulate a given course of conduct by prohibitory enactments, a municipal corporation with subordinate power to act in the matter may make such additional regulations in aid and furtherance of the purpose of the general law as may seem appropriate to the necessities of the particular locality and which are not in themselves unreasonable. (*In re Hoffman*, 155 Cal. 114 [99 Pac. 517, 132 Am. St. Rep. 75]; *Mann* v. *Scott*, 180 Cal. 550 [182 Pac. 281]; *In re Iverson*, 199 Cal. 582 [250 Pac. 681]; *Borum* v. *Graham*, 4 Cal. App. (2d) 331 [40 P. (2d) 866]; *Witt* v. *Klimm*, 97 Cal. App. 131 [274 Pac. 1039].)

■ In the instant case the requirement of the ordinance is, in effect, that no milk for human consumption may be sold in the area, unless it is pasteurized with the single exception of certified milk; certified milk is raw milk. That requirement is clearly an additional regulation relating to the sale and distribution of milk inasmuch as the Agricultural Code provides for the sale of guaranteed raw milk and grade A raw milk. (Agri. Code, §§ 484, 487, 488.)

Plaintiffs contend, however, that the Agricultural Code so completely occupies the field of regulation relating to the production, sale and distribution of milk for human consumption, that there is no room for the operation of an ordinance of a municipality on the subject. ■ It is the general rule that where the state law so covers the entire field that there is no room for municipal regulation, the latter regulations are necessarily in conflict with the state law. (See *Ex parte Daniels*, 183 Cal. 636 [192 Pac. 442, 21 A. L. R. 1172]; *Atlas Mixed Mortar Co.* v. *City of Burbank*, 202 Cal. 660 [262 Pac. 334]; *Ganley* v. *Claeys*, 2 Cal. (2d) 266 [40 P. (2d) 817]; *Ex parte Grey*, 11 Cal. App. 125 [104 Pac. 476]; *In re Murphy*, 190 Cal. 286 [212 Pac. 30]; *In re Mingo*, 190 Cal. 769 [214 Pac. 850], and *In re Iverson, supra.*) The case most closely allied to the instant case is *In re Iverson, supra,* in which the state prohibition act, containing comprehensive regulation with regard to the sale of intoxicating beverages, provided that prescriptions for the sale of liquor may be filled

in quantities not exceeding sixteen ounces of alcoholic liquor. The municipal ordinance in question limited the quantities per prescription to eight ounces. This court held there was no conflict and that the state did not intend to completely occupy the entire field. At page 586 it stated the rule to be:

"The only way the legislature can inhibit local legislative bodies from enacting rules and police regulations is by the state itself occupying the same legislative field so completely that legislation on the subject by local legislative bodies will necessarily be inconsistent with the state act. It does not follow that because the legislature has seen fit to make certain general rules applicable in all the cities and elsewhere in the state it has thereby impliedly prohibited the enactment of additional local regulations by municipalities in keeping with the purpose of the general law. So long as the requirements of the municipal ordinance are not in themselves pernicious, as being unreasonable or discriminatory, both may stand. There may be different regulations without a conflict. [Cases cited.] Where the legislature has assumed to regulate a given course of conduct by prohibitory enactments, a municipality with subordinate power to act in the matter may make such new and additional regulations in aid and furtherance of the purposes of the general law as may seem fit and appropriate to the necessities of the particular locality and which are not in themselves unreasonable. . . . Whether the legislature has undertaken to occupy exclusively a given field of legislation is to be determined in every case upon an analysis of the statute and of the facts and circumstances upon which it was intended to operate." ▮▮ In the instant case the requirement in the ordinance that only pasteurized (certified excepted) milk may be sold is nothing more than a different and additional regulation. The Agricultural Code permits certified guaranteed milk, both raw and pasteurized, and grade A, both raw and pasteurized. The ordinance merely imposes the additional restriction that the milk, whether it be guaranteed or grade A must be pasteurized.

Furthermore, that the Legislature did not intend to occupy the field so completely that no room was left for municipal regulation is evidenced by section 451 of the Agricultural Code. It provides in part:

"No provision of this division, except subdivision (b) of section 458.1, or any rule and regulation of the director is a limitation on the power of a municipality or county to provide for reasonable additional regulations not in conflict there-

with requiring standards higher than the minimum requirements for the grades of market milk established in this division.'' While such a provision will not validate an ordinance if it in fact conflicts with the state law, it is available as an indication that the Legislature did not intend to completely occupy the field to the exclusion of municipalities. (*In re Iverson, supra.*) Plaintiffs assert, however, that the sole field of operation left by that provision to municipalities is to impose stricter requirements upon the various grades of milk as established by the Agricultural Code, but does not permit the complete prohibition of the sale of any one of the grades; that the ordinance prohibits the sale of two of the grades of milk set forth in the Agricultural Code, namely guaranteed raw milk and grade A raw milk, which creates a conflict with the provisions of that code. That argument is very tenuous. We do not believe that that section may be given such a narrow interpretation. It is doubtful that there are more than three grades of milk for human consumption specified in the Agricultural Code, namely, certified, guaranteed and grade A. The latter two grades might be said to be divided into two kinds, raw and pasteurized, the main distinction between grade A raw and grade A pasteurized, for illustration, being the pasteurization. It is true that there is some difference in the requirements between the raw and the pasteurized milk other than pasteurization, but those differences appear to concern matters which have a direct relation to the results accomplished by pasteurization, such as the more frequent examination of the cows in case of raw milk when there is no process by which any bacteria are destroyed. Essentially, the requirement in the ordinance of pasteurization for both the guaranteed and grade A milk is merely a higher standard for the grades which is not in conflict with the state law. That interpretation finds support in sections 490, 585, 587 of the Agricultural Code, which refer to the various grades of milk established. Section 490 provides:

''It is unlawful to sell any milk as, or under the representation of, *guaranteed or grade A milk,* except under the supervision of a milk inspection service approved by the director or established and conducted by the director.'' (Emphasis added.) No mention is made of pasteurized grade A and pasteurized guaranteed milk as being grades of milk. Section 585 dealing with the labeling of milk containers reads:

''The *class or grade of all* market milk sold, except in bulk

to distributors, the word 'raw' or 'pasteurized,' as the case may be, and the name and address of the producer or original bottler shall at all times appear plainly and in a conspicuous place on, or be securely attached to, every cap, bottle, can or other container." (Emphasis added.) The intimation is clear that pasteurization is an additional requirement within a grade, rather than a designation for an independent grade. Section 587 provides:

"Where an approved milk inspection service is maintained as provided in this code, *market milk shall be graded* and designated as follows: 'certified milk,' 'guaranteed milk,' 'grade A milk.' " (Emphasis added.) Note there is no provision that pasteurized and raw guaranteed or grade A milk are separate grades.

Plaintiffs rely upon *LaFranchi* v. *City of Santa Rosa*, 8 Cal. (2d) 331 [65 P. (2d) 1301, 110 A. L. R. 639]. In that case this court gave consideration to an ordinance prohibiting the sale of milk in Santa Rosa unless it was pasteurized in that city. There was a milk inspection service established (with the approval of the state) which embraced within its jurisdiction, that city, also the milk producer's facilities. The producer pasteurized his milk in his own approved plant. It was contended that there was a conflict between the ordinance and the state law, and the court so held but it was primarily concerned with the traffic barrier erected by the restriction on the place of pasteurization and it pointed out that the requirement that the pasteurization be done within the city, was not a higher standard for milk, conceding at page 336 however, that:

"In considering this phase of the case, however, we may first assume that the municipality may adopt reasonable requirements with regard to the standards of the products which are not inconsistent with the Agricultural Code; that is to say that the municipality may provide for standards higher than those fixed by the Agricultural Code, although it may not provide for standards below those fixed by the Agricultural Code. (*In re Hoffman*, 155 Cal. 114 [99 Pac. 517, 132 Am. St. Rep. 75], and *In re Iverson*, 199 Cal. 582 [250 Pac. 681].) It must also be taken for granted that the municipality may adopt zoning ordinances. Under the allegations of the complaint in the instant cause it appears that the *ordinance here in question does not purport to increase the standards of the product nor relate to a particular portion of the city in which pasteurization plants may be located.*" (Emphasis

added.) Such cases as *In re Sic,* 73 Cal. 142 [14 Pac. 405] ; *In re Mingo, supra,* and *Ex parte Daniels, supra,* were distinguished by this court in *In re Iverson, supra.*

Plaintiffs contend that the ordinance is void on the ground that it discriminates in its operation without any reasonable basis for such discrimination contrary to the constitutional inhibitions (U. S. Const., 14th Amend.; Cal. Const., art. I, sec. 21.) Their attack is specifically aimed at that part of the ordinance which prohibits the sale of any milk for human consumption in San Francisco other than pasteurized milk with the single exception of certified milk, and imposes penalties for the violation thereof. Certified milk is raw milk and it may be sold under the ordinance. Plaintiffs assert that there is no substantial difference between guaranteed raw milk as defined in the Agricultural Code and certified milk as defined in the ordinance and therefore there is no reasonable basis for forbidding the sale of one and not the other. They concede, however, that if there is a difference then their contention must fail. A comparison of the two standards reveals without doubt that there is a substantial and reasonable difference which is directly related to the public health. To qualify as guaranteed raw milk, the health of the cows must be determined once a month, the milk must be produced on dairies having a score of 90%, it must be bottled on the premises, it must be cooled immediately after being drawn to 50 degrees Fahrenheit or less and so maintained until delivered to the consumer at which time it shall have not more than a 10,000 bacteria count per milliliter, and must be sold within 30 hours and the handlers thereof must be free from disease. The standards for certified milk are quite similar but in addition it is required in the ordinance that it conform "to the rules, regulations, methods and standards for the production . . . of certified milk adopted by the American Association of Medical Milk Commissions and must bear the certificate of the Milk Commission of the San Francisco County Medical Society." It would seem that, whatever may be the rules and regulations of the association, certified milk may be said to be subjected to a more rigid inspection than guaranteed raw milk by persons exceptionally well qualified therefor, that is, physicians and surgeons. Furthermore, the Agricultural Code recognizes certified milk as being in a class by itself. (Agri. Code, § 484.) It must be remembered that a wide discretion is vested in the legislative body with

respect to whether a classification is reasonable and proper and every presumption is in favor of the validity of such a statute. (5 Cal. Jur. 832, et seq.) We cannot say that the ordinance here is invalid as making an arbitrary and unreasonable distinction between certified milk and guaranteed or grade A raw milk.

Plaintiffs invoke the due process clause in their attack upon the ordinance (U. S. Const., 14th Amend., sec. 1; Cal. Const., art. I, sec. 13.) It is true that the sale and distribution of milk is a lawful business which is protected by the Constitution, both federal and state. But it cannot be doubted that as milk is vital to the welfare of the nation and is susceptible of being a carrier of disease, the production, distribution and sale thereof may be strictly regulated under the police power to safeguard the public health. (*In re Hoffman, supra; Witt* v. *Klimm, supra.*) It has been held repeatedly that it is within the scope of the police power to require, for the protection of the public health, that all milk for human consumption must be pasteurized. (*Witt* v. *Klimm, supra; Koy* v. *Chicago,* 263 Ill. 122 [104 N. E. 1104, Ann. Cas. 1915C, 67]; *City of Phoenix* v. *Breuninger,* 50 Ariz. 372 [72 P. (2d) 580]; *Pfeffer* v. *Milwaukee,* 171 Wis. 514 [177 N. W. 850, 10 A. L. R. 128]; *People* v. *McGowan,* 118 Misc. 828 [195 N. Y. Supp. 286, 289]; *Lang's Creamery* v. *City of Niagara Falls,* 224 App. Div. 483 [231 N. Y. Supp. 368]; *State* v. *Edwards,* 187 N. C. 259 [121 S. E. 444]; *Moll* v. *City of Lockport,* 118 Misc. 573 [194 N. Y. Supp. 250]; 18 A. L. R. 246; 42 id. 558.) It cannot be doubted therefore that the requirement that all milk for human consumption be pasteurized is a proper police regulation. The fact that here an exception is made with reference to certified milk does not alter the situation. Certified milk has long been established as milk in which especial precautions are taken to insure absence of disease and contamination, and the supervision is by especially qualified experts. Legislation with respect to preservation of the public health will not be set aside unless the legislative discretion is palpably wrong; this court said in *Jardine* v. *City of Pasadena,* 199 Cal. 64, 72 [248 Pac. 225, 48 A. L. R. 509]:

" 'Every intendment is to be indulged in and all doubts resolved in favor of the validity of its action.' The legislative determination of the facts which warrant the action of the legislative body will not be set aside or disregarded by the court unless the legislative discretion is clearly and palpably

wrong and such appears to be and is found to be the fact from the evidence educed before the trial court. (*In re Miller,* 162 Cal. 687 [124 Pac. 427] ; *Stockton etc. Co.* v. *Stockton,* 41 Cal. 147; *Ex parte Tuttle,* 91 Cal. 589 [27 Pac. 933] ; *In re Spencer,* 149 Cal. 396 [117 Am. St. Rep. 137, 9 Ann. Cas. 1105, 86 Pac. 896] ; *In re King,* 157 Cal. 161 [106 Pac. 578].)'' █

It cannot be said that the city and county of San Francisco had no reasonable grounds for requiring all milk sold therein to be either pasteurized or certified. That other less stringent or different regulations might have sufficed is not our concern; that is a matter lying within the discretion of the legislative body. The ordinance does not prohibit the sale of milk for human consumption in San Francisco, it merely sets forth standards or requirements as to quality that must be met by the milk producers before it may be sold.

█ Plaintiffs urge that there is an unconstitutional delegation of legislative power in that portion of the ordinance dealing with certified milk. Subdivision 2 of section 3 hereinabove set forth is the particular provision which plaintiffs attack. Specifically they assert that the provision ''certified milk is market milk which conforms to the rules, regulations, methods and standards . . . adopted by the American Association of Medical Milk Commissions and must bear the certificate of the Milk Commission of the San Francisco County Medical Society'' is vulnerable. The American Association of Medical Milk Commissions is a corporation with its principal place of business in New York whose members are the various local milk commissions throughout the nation. The Milk Commission of San Francisco County consists of five members appointed by the County Medical Society, the latter being composed of physicians and surgeons licensed to practice medicine in this state. A fee is charged to those desiring to produce and sell certified milk to cover the costs of inspection, and to purchase the caps from the American Association of Medical Milk Commissions with the trade marked word ''certified'' thereon to be used on the containers. The commission legally is not an administrative agency of San Francisco or the state. In conformity with the rule that when it may reasonably be done, a statute should be interpreted in a manner that will avoid its being declared unconstitutional, we believe that the requirement in the ordinance may be said to require merely that certified milk must meet standards established by a private corporation or group who are experts in the field,

and that the legislative body was aware of those regulations and standards and by the ordinance merely made them a part thereof. Under that view there is no unlawful delegation of legislative power. The ordinance is not essentially different from the statute requiring that to obtain a license to practice medicine the applicant must produce a diploma from a medical school whose requirements are in no particular less than those prescribed by the Association of American Medical Colleges, a private organization, which was declared to be not an unlawful delegation of power in *Ex parte Gerino,* 143 Cal. 412 [77 Pac. 166], and *Arwine* v. *Board of Med. Examiners,* 151 Cal. 499 [91 Pac. 319]. It comes within the rule announced in *Ex parte Gerino, supra,* at page 418 as follows:

"It being proper for the legislature to demand some standard of efficiency, as we have seen, we think it is equally within its powers to declare that it shall be the same as that prescribed from time to time by an association composed of colleges devoted to the work of preparing persons for the profession. Evidently the standard of proficiency in scholarship as a preparation, and the particular studies necessary to secure a fair preparation, must change as the discoveries in natural science open new fields of investigation and suggest or reveal new curative agencies. The legislature cannot successfully prescribe in advance a standard to meet these new and changing conditions. The method adopted appears to be sufficiently definite to enable all colleges to reach the required standard when in good faith they desire to do so. The law is as fixed, definite, and certain in this respect as the nature of the subject and the object to be attained will permit, and we do not think it should be held void because it adopts the standard fixed from time to time by those who, it will be presumed, are the most eminent in the profession which it attempts to regulate, and who should be the most interested in maintaining the highest degree of professional proficiency, skill, and training." The standards promulgated by the American Association of Medical Milk Commissions are presumably established by medical experts. (See also *St. Louis, Iron Mountain & S. Ry. Co.* v. *Taylor,* 210 U. S. 281 [28 S. Ct. 616, 52 L. Ed. 1061].) The cases of *Schechter Poultry Corp.* v. *United States,* 295 U. S. 495 [55 S. Ct. 837, 79 L. Ed. 1570, 97 A. L. R. 947], and *Panama Refining Co.* v. *Ryan,* 293 U. S. 388 [55 S. Ct. 241, 79 L. Ed. 446], are not in point inasmuch as no standard whatsoever was there given by the statute for guidance of those to whom authority was delegated. The regulations and

standards provided here for certified milk must be aimed at the procurement of milk free from contamination or other conditions detrimental to health.

It appears from the evidence that in order for a producer to obtain a permit from the Milk Commission of the San Francisco County Medical Society authorizing the sale of certified milk in said city and county, he must permit said commission to make an inspection of his facilities and the milk produced therefrom and pay certain inspection fees which said commission has fixed to cover the cost of such inspection. It is contended by plaintiffs that such procedure constitutes a violation of the charter of the city and county of San Francisco, in that section 24 thereof specifically defines the manner of collection of inspection fees and the issuance of permits, and that the Milk Commission of the San Francisco County Medical Society being a nongovernmental body has no authority to collect such fees or issue permits authorizing the sale of certified milk. However, it must be noted that the ordinance here in question contains no provision requiring the payment of fees or other charges to said Milk Commission or any other nongovernmental body. While it does appear from the evidence that fees have been demanded by and paid to said Milk Commission, plaintiffs have not been required to pay any such fees as they have not made application for a permit to sell certified milk in San Francisco. The authority of the Milk Commission to demand and collect inspection fees in connection with the certification of milk is not necessarily involved in this case, as plaintiffs did not apply for a permit or certificate authorizing them to sell certified milk, but by their action they seek to enjoin the enforcement of an ordinance which prevents them from selling and distributing "guaranteed raw milk" in the city and county of San Francisco.

In view of what we have said in the foregoing opinion, it necessarily follows that the ordinance in question is a valid exercise of the police power of the respondent city and county, and the judgment is therefore affirmed.

Shenk, J., Curtis, J., Houser, J., and Traynor, J., concurred.

Appellants' petition for a rehearing was denied April 30, 1942. Edmonds, J., voted for a rehearing.