## Allegheny County v. Brunner

*Maurice Louik* and *James V. Voss*, for plaintiff.

*Leonard A. Mazer*, for defendant.

CERCONE, J., September 7, 1961.—The Health Department of Allegheny County instituted this action in equity against defendant, Louis P. Brunner, to enjoin him from selling milk in Allegheny County without a permit from the health department, and further from selling milk unless pasteurized. These requirements for the sale of milk are set forth in the department's rules and regulations. Defendant challenges the validity of the regulations requiring that all milk sold in Allegheny County be pasteurized. . .

A similar problem came before this court some years ago in the case of Dairymen's Association v. City of Pittsburgh, reported in 91 Pitts. L. J. 169 (1943). In that case the learned chancellor, Judge McNaugher, said (p. 171):

"Evidence has been offered on the question whether enforcement of the ordinance will work hardship upon

certain dealers. Also, it is argued that raw milk is superior in nutritive value to milk which has been processed. Neither of these considerations can determine the issue of the case. The sole inquiry here is whether the city of Pittsburgh had the authority by ordinance to prohibit the sale of all but pasteurized milk when the act of assembly recognizes four classes or grades, including raw milk."

In the instant case, it is the regulation of the county against sale of milk unless pasteurized that is questioned by defendant. Section 18 of the Act of July 2, 1935, P. L. 589, known as the Milk Sanitation Law, contains the following language:

"The provisions of this act, and the regulations made thereunder, shall not be taken nor deemed to repeal existing municipal ordinances, nor to prevent municipalities from enacting and enforcing new ordinances for the further protection of the public health: Provided, That this act shall be considered as establishing uniform requirements and regulations, and that nothing herein contained shall be deemed to prevent municipalities from ordaining and enforcing such additional requirements in excess of the requirements and regulations hereunder, as may be deemed necessary, from time to time for the preservation of public health, and to require applications from, and to issue permits to, such persons as may be defined by local ordinances."

Defendant contends that under the language of the statute the county may have the right to prescribe additional and more strict regulations in connection with the sale and distribution of the four classes of milk— raw, certified, pasteurized, and milk for pasteurization —but does not have the authority to completely restrain any of these classes for which a state permit might be issued. In answer to this contention the court in the Dairymen's case, supra, said (p. 171-172) :

"We think such a construction of the act entirely too

narrow. In its title the reference is to 'milk and milk products,' and not to any particular classes or grades of milk. The section involved refers to 'requirements and regulations,' and not merely to regulations. It is to be noted that by its language it 'shall not be taken or deemed to repeal existing municipal ordinances.' This means that had there been prior to its enactment an ordinance of the city of Pittsburgh prohibiting the sale of all but pasteurized milk, such a requirement would have remained unaffected by the provisions of the act. It may be fairly reasoned then that the legislature by the other language employed in section 18 intended that, 'for the protection of the public health,' a municipality might after the enactment pass an ordinance similar in effect to one which it might have passed prior thereto.

"It is our opinion that after laying down what it considered a minimum of requirement and regulation the legislature gave authority to municipalities, in the exercise of their police powers as theretofore and in furtherance of the public health, to prescribe, 'in excess of the requirements and regulations hereunder,' that all milk sold within their limits be pasteurized. It was intended that the authorities in various communities should be free, beyond the fixed minimum, to determine upon methods which in their judgment, considering particular circumstances, would best insure the health of milk consumers."

In addition to this legal pronouncement handed down in 1943 by a judge of this court, the weight of authority approves the validity of reasonable enactments promulgated by lawful authority requiring pasteurization of milk to conserve the public health: 22 Am. Jur. 858, §68. In the case of Natural Milk Producers Association of California v. City and County of San Francisco, 20 Cal. 2d 101, 114, 124P 2d, 25, 32, the court said:

"It has been held repeatedly that it is within the scope of the police power to require, for the protection of the public health, that all milk for human consumption must be pasteurized . . . It cannot be doubted therefore that the requirement that all milk for human consumption be pasteurized is a proper police regulation."

In addition to this expression of authority is the fact that courts will take judicial notice of scientific facts which are commonly recognized, including the knowledge that bacteria, harmful if consumed by humans, are to be found in raw milk, and that pasteurization is an effective way to destroy such harmful germ life: Schlenker v. Board of Health, 171 Ohio 23, 167 N. E. 2d 920, (1960).

In the instant case, judicial notice is augmented by evidence presented at the trial in the form of expert testimony to the effect that pasteurization of milk is necessary for the protection of the health of the community. It is interesting to note that one of the expert witnesses called in behalf of defendant, Dr. D. I. Jamison, Jr., testified that pasteurization is one of the steps to insure good milk. This witness, a member of the board of trustees of Mayview State Hospital, stated that the only reason the board has not instituted pasteurization at that institution is because of financial difficulties, and that as soon as the funds are available the policy will be instituted.

As the court has indicated above, this case does not devolve upon the court's opinion of the safety of raw milk for human consumption. It is merely a question of whether the county health department has the authority to restrict the sale and distribution of milk unless pasteurized. In view of the language of the Act of 1935, and the weight of authority, the pasteurization regulation is not in conflict with the statutory law of Pennsylvania. The Act of 1935 did enact extensive

legislation pertaining to milk and milk products, but in no way can it be said that the statute treated exclusively on the subject of pasteurization. This is clearly indicated by the authority given to municipalities by the legislature to exercise under their police power regulations "in excess of the requirements and regulations hereunder" necessary to insure the health of the public.

In the light of the foregoing, it is the opinion of the chancellor that the county health department has the authority to restrict the sale and distribution of milk in the county unless pasteurized. . .

### Decree Nisi

And now, September 7, 1961, it is ordered that defendant be enjoined from operating his milk plant until the operation of the aforesaid milk plant conforms to the rules and regulations of the Allegheny County Health Department, said decree being effective forthwith.

Costs of these proceedings to be borne equally by the parties.